## CORD v. NEW YORK CLEANING & DYE WORKS, Inc.

### Civ. No. 2236.

United States District Court
D. Connecticut.

Oct. 14, 1948.

Adrian W. Maher, U. S. Atty., Dist. of Connecticut, Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Charles Weingarten, Bridgeport, Conn., for defendant.

SMITH, District Judge.

Plaintiff brings this action under the reemployment provisions of the Selective Training and Service Act of 1940, as amended, Title 50 U.S.C.A.Appendix, § 308(e), to recover a claimed difference between the amount he had been receiving from his employer before his discharge, stipulated to be $72.07 a week, and the amount earned by him between the date of his discharge, April 28, 1947, and July 15, 1947, the latter date being one year after the date of his reemployment.

There are two matters in dispute: (1) whether the discharge was for cause; and (2) whether plaintiff has established any loss of wages during the period in question by reason of his discharge.

Plaintiff, on his return from military service, was, after a slight delay, placed in the same position he had held before entering the service,—as a route salesman and collector, calling upon, and picking up and delivering goods to, wholesale customers of the defendant dry-cleaning concern. He worked from July 15, 1946 until April 28, 1947 at a salary of $25 a week, plus a commission of ten per cent of the gross sales, averaging during this period $72.07 total per week compensation. About Christmas, 1946, plaintiff and one Braunstein started a peanut-vending machine business, buying, selling, and servicing evenings, Saturday afternoons, and Sundays. On April 28, 1947 defendant discharged the plaintiff on the ground that his work was not satisfactory in that he was neglecting customers and spending time, during work-

ing hours, on the outside business of his own. The stories of the two witnesses,— plaintiff and Fischer for the defendant,— are completely at variance as to the circumstances of the discharge, plaintiff claiming that he was discharged without any warning on the ground that business did not warrant the use of a truck on the route and that defendant intended to give part of the route to another driver and make other arrangements for the other part of the route. Plaintiff claims that no mention was made to him of any complaint because of taking time from his regular job to do his own outside business.

Fischer, on the other hand, claims that customers had complained about plaintiff's not serving them properly and had reported seeing him delivering merchandise to his peanut-vending machines during working hours. Fischer claims that he, before he fired the plaintiff, several times spoke to him about his peanut-vending-machine business' interfering with his work for the defendant. Fischer also contends that when he spoke to the plaintiff about it plaintiff was "sassy".

■ There is evidently some feeling between plaintiff and Fischer and the testimony of both is colored thereby and, therefore, unreliable. The commissions earned by the plaintiff, however, do not seem to indicate any marked dropping off of the business done by him after he had started the peanut-vending-machine business, his second highest week in fact coming during the month in which he was discharged. It should have been an easy matter for defendant to produce direct evidence of plaintiff's doing outside work during the hours he should have been working for the defendant and of any unsatisfactory performance of his duties in serving defendant's customers. From the evidence before the Court it appears most likely that the discharge was a result of some personal feeling because of the plaintiff's appearing "sassy" to Fischer and, no indication of the nature or extent of the "sassiness" appearing, the Court cannot say that the discharge was for cause.

Plaintiff has, however, failed to give any clear picture of the amount of loss, if any, sustained by him because of the discharge.

He and his partner Braunstein had, about the end of 1946, started the peanut-vending-machine business, buying machines in New York and purchasing nuts and, to some extent, other merchandise for sale in the machines. The two each contributed half of a total capital of $2,175 and both serviced the machines during the evenings and Saturday afternoons and Sundays. Neither drew any salary until plaintiff was discharged by defendant. After that, plaintiff drew $50 a week in cash of which he ascribed $10 a week to the expenses of running his car. After his discharge by the defendant plaintiff was able to handle the entire business days and Braunstein no longer worked on servicing the machines and eventually dropped out, selling out to the plaintiff.

During the period in question here, that is, from the date of the discharge, April 28, 1947, until July 15, 1947, the two were still in partnership but, as indicated, plaintiff was the sole employe and drew a salary which amounted to $440 during the eleven weeks, plus expenses. During this period, however, he also used checks of the partnership for his personal use in the amount of $116.08. It is impossible to establish from the evidence what the profits were during this period and whether or not, or to what extent, they were ascribable to plaintiff's spending full time on the vending-machine business.

■ There is some indication, however, that some substantial profits were made by the partnership during this period, for payments for machinery and equipment amounted to $966.25. (Incidentally, on closer inspection, it is found that the plaintiff's interpretation of a figure in the machinery column of page 3 of Exhibit No. 1 as being $278 is correct) During this period the checking account shows a reduction of $235. These two items, therefore, would appear to indicate an increase in net worth during the period (probably a minimum figure) of $721.25, one-half of which, $365.63, would be represented by the plaintiff's interest in the partnership, so that plaintiff's total gain from the business during the period may be con-

sidered to be: salary, less expenses, $440; share in increase of assets of partnership, $365.63; checks drawn for personal purposes, $116.08; a total of $921.71, an average of $83.79 a week. There is not sufficient evidence to determine what portion of this was earned by plaintiff's daytime work but would have been earned under the old part-time basis. It would appear, therefore, that the plaintiff has failed to establish a loss to himself, during the period in question, by reason of his discharge.

### Conclusions of Law.

1. The court has jurisdiction of the parties and subject matter of the action.

2. The defendant was not entitled to discharge the plaintiff without cause within one year of his reemployment.

3. Plaintiff was discharged by defendant without just cause within one year of his reemployment.

4. Plaintiff has failed to establish any damage because of his illegal discharge.

5. Defendant is entitled to judgment dismissing the action.

Judgment may be entered for the defendant, dismissing the action.